**MARGARET WALLACE**

P.O. BOX 8732, ALLENTOWN, PA 18105-8732, U.S.A.
PHONE: 610-434-6096

# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

MARGARET WALLACE,

    Plaintiff

    vs.

SUPERIOR GROUP,
SHARP CORP.,
C.K. HOBBIE, INC., et al.

    Defendants

**COMPLAINT NO. 2005 CV-**

Judge

FILED 05 - 2797

JUN 13 2005
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## EMPLOYMENT DISCRIMINATION COMPLAINT
## UNDER 42 U.S.C. §§ 1983, 1985, 1986

    The Plaintiff, Margaret Wallace, files this Employment Discrimination Complaint

under 42 U.S.C. §§1983, 1985, 1986 because it does not fall under the clear standards

of Title VII of the Civil Rights Acts of 1964 and 1991 which would necessitate

administrative action by the EEOC prior to the Complaint being lodged with this Court.

This case involves the unlawful termination of employment of the Plaintiff after she was

knocked down in the company facility by a pallet jack (small forklift) used carelessly

by a company employee, while she was walking properly in the facility on the job.

## THE PARTIES

**Plaintiff in this Civil Action:**

    **Margaret Wallace**

**Defendants in this Civil Action - All Individually and in their Official Capacity:**

1.    **Superior Group, Inc.**, 3 Radnor Corporate Center, Ste. 400, P.O. Box 6760, Radnor, PA 19087 (Phone: 610-964-2000, Fax: 610-964-2001), **and the Management and ownership thereof:**
> CEO, President, and other Ownership and/or Management, nationally and/or internationally (presently not completely identified), including:
> **William G. Warden IV, CEO**
> **William G. Warden III**
> **Peter G. Gould**, President
> Superior Group, Inc. is the family owned holding Company of the Wardens which owns Sharp Corp, the scene of the accident.

2.    **Sharp Corporation**, 23 Carland Rd., Conshohocken, PA 19428 (Phone: 610-279-3550, Fax: 610-279-4712), **and the Management and ownership thereof:**
> CEO, President, and other Ownership and/or Management, nationally and/or internationally (presently not completely identified), including:
> **George K. Burke**, President
> This is presently Corporate headquarters of privately owned Sharp Corp.

3.    **Sharp Corporation**, 7451 Keebler Way, Allentown, PA 18106 (Phone: 610-395-5800), **and the Management and ownership thereof:**
> CEO, President, and other Ownership and/or Management, nationally and/or internationally (presently not completely identified), including:
> **George K. Burke**, President (believed to be President at this location)
> **Tom D'Flipo**, Manager
> **(Unknown pallet jack** [small forklift] **operator)**
> This is the scene of the accident, and to become Corporate headquarters.

4.  **C.K. Hobbie, Inc.**, (also known as **Hobbie Personnel**), 3434 Hamilton Blvd., Allentown, PA 18103-4539 (Phone: 610-433-3677 ), **and the Management and ownership thereof:**

  CEO, President, and other Ownership and/or Management, nationally and/or internationally (presently not completely identified), including:
  **Pam Kamp**, Risk Manager
  **Laura Wallace** (no relation to Plaintiff), HR Manager (?)
  This was the temp service Employer (multiple locations) of the Plaintiff.

5.  **Other Parties Unknown** to the Plaintiff at this time because she did not have access to the records of the incident at time of filing, **and the Management and ownership thereof:**

  CEO, President, and other Ownership and/or Management, nationally and/or internationally (presently not identified).
  This is to prevent dismissal on grounds of "Insufficiency of Process", "Insufficiency of Service of Process", and "Failure to Serve a Necessary and Indispensable Party", since these Parties are presently unknown.

## JURISDICTION OF THE FEDERAL COURT

This Civil Action comes under the jurisdiction of the United States District Court

for the Eastern District of Pennsylvania because:

1.  This Court has personal jurisdiction over all Parties because they live within its

  Judicial District or own property within this Court's Judicial District, per FRCP

  Rule 4(h)(1), 4(h)(2), 4(k)(2),  4(n)(1), 4(n)(2), and the like.

2.  This Court has subject matter jurisdiction over all issues because:

  A. This Civil Action is brought under 42 U.S.C. §§1983, 1985, 1986.

  B. Deprivation of Rights under 42 U.S.C. §1981, regarding race/ethnicity

may be brought  after an examination of the record and corporate

"attitude" of the Parties. Absence of EEOC administrative action is

explained hereunder.

C.     This Case cannot be heard in the State Courts of jurisdiction that have

authority to adjudicate such matters due to a comprehensive continuing

conflict of interest from 2000 to the present time which is being addressed

in the Federal Justice System, inasmuch as no level of State Court will be

able to exercise impartial jurisdiction because of the conflicting  matters.

3.     This Court has jurisdiction under the Constitution to grant relief for all Claims

of the Plaintiff, including torts arising from the accident.

4.     This Court has jurisdiction to grant subpoenas to compel disclosure of all Parties

not presently known to the Plaintiff, or to compel the Defendants to disclose this

information through Federal interrogatories, and to enforce subsequent joinder

of all necessary and/or indispensable Parties, whether national or international,

when their identities are known.

5.     This Court has jurisdiction to effect sufficiency of process and sufficiency of

service of process, whether national or international, when the identities of all

Parties are known.

6.     This Court has venue because the acts against the Plaintiff occurred in its

Judicial District.

7.     In the event that subsequent investigation identifies and substantiates a cause of

action under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended,

42 U. S. C. §2000e et seq. (1988 ed., Supp. III), (and the Civil Rights Act of

1991) for acts of sexual harassment and sexual discrimination in the workplace

pursuant to 42 U.S.C. §2000e-5(f )(1)(3), this Court has jurisdiction, and can

grant relief pursuant to 42 U.S.C. §2000e-5(g). The Federal Courts have ruled

on many such cases, e.g., <u>Harris v. Forklift Systems</u>, 510 US 17 (1993).

## BRIEF STATEMENT OF CASE

This case is unusual because it centers on a gross Human Rights violation that

is so crude and foreign to contemporary American culture that the Reasonable Person

would shrink in horror and marvel that such an injustice could be done in the Land of

the Free, and the Home of the Brave. <u>On the job in the workplace the female Plaintiff</u>

<u>was physically knocked down by a pallet jack (small forklift) operated carelessly. This</u>

<u>resulted in the Employer terminating her employment, though she was in no way at fault</u>

<u>for the accident which the Employer tried to cover up.</u> This was not only a violation of

the Plaintiff's Rights under the Constitution, but an inhuman event of the basest sort.

The Plaintiff is a non "white" permanent resident who grew up in Africa, but has lived here for the past thirty years. She is a family person, wife, and mother. The Plaintiff dresses conservatively in skirts and dresses, and does not encourage male attention on or off the job in any way. The Plaintiff speaks properly and conservatively with no references to sex or "off color" subjects.

The Plaintiff was employed by Hobbie Personnel, a temporary contractor, to work in production at the Allentown Production facility of Sharp Corporation which packages pharmaceuticals using blister packaging, pouch packaging and bottling. Sharp has the largest capacity in the industry for producing blister packaging. The Allentown site employs about 300 people. The Plaintiff was assigned to work in production. The Plaintiff had been sent by Hobbie Personnel to work at Sharp.

A few minutes before 7.00 AM, Monday, 18 January 2005, on her way to her work station at the beginning of the work shift the Plaintiff was walking past Room 340 at Sharp when she was struck from behind and to her left by a carelessly driven pallet jack (small forklift), knocked to the concrete floor, hitting her head on the floor, spraining her left arm which bent under her, and sustaining other injuries.

The Plaintiff wore a full length white Tyvek lab coat over her regular clothes. Because of the white garment, she was very visible in the newly remodeled, well-

lighted facility. The Plaintiff had not been at fault in any way in walking in the facility, and she was in an authorized area at an authorized time walking to her assigned job at the beginning of the shift. The Plaintiff did nothing to encourage the accident, was not engaged in "horseplay", and was exercising reasonable prudence while walking (since she is 52 years old, and has walked for a long time). The accident was entirely the fault of the pallet jack operator (and possibly others who are not identified presently).

After being knocked to the floor by the pallet jack, the Plaintiff was treated at a hospital facility on Monday, 18 January 2005. Rechecked by trained physicians on Friday, 21 January 2005 she was able to resume the same job with no restrictions.

Hobbie Personnel unlawfully reported the Plaintiff's termination of employment to the Pennsylvania Department of Labor and Industry Unemployment Compensation Board as a "voluntary quit", whereas in fact the Plaintiff had her employment terminated under 42 U.S.C. §1983 (and possibly §1981), and the tort of the Employer (both of them) concerning the accident itself had not been resolved or addressed in any way. This is stated as corroboration of the Plaintiff's claims under 42 U.S.C. §1983, the issues of unemployment compensation being resolved presently by the State Dept. of Labor and Industry.

Hobbie also indicated to the State Unemployment Commission that the Plaintiff was so grievously injured that she could not perform any type of work at all.

Both Hobbie claims to the State Unemployment Commission were completely without substance, fallacious, and unsworn falsification. Both Hobbie claims deprived the Plaintiff of Rights under 42 U.S.C. §1983.

It is unknown whether the pallet jack operator was under the influence of alcohol or drugs, engaged in "horseplay", was impaired mentally, or intentionally endangered the life of the Plaintiff for any reason, including the cause of action stated, or for any other cause of action that could be stated, such as, but not limited to 42 U.S.C. §1981. A cause of action under 42 U.S.C. §1981 may arise against Sharp management. The Plaintiff alleges that the accident itself could have resulted in her death or permanent disability due to the weight and construction of the pallet jack, and the force and vector (combination of speed and direction) with which such a vehicle can impact a person.

<u>The Plaintiff descries the palpable reek of injustice surrounding the Defendants and their acts as so atypical of natural human behavior, that she has been forced by normal standards of decency to challenge their unlawful acts in this Civil Action.</u>

## DISCUSSION

This Civil Action does not fall under the guidelines for preliminary investigation by the EEOC under Title VII of the Civil Rights Acts of 1964 and 1991, even though it involves employment discrimination in the workplace. At this point, the case does not appear to involve any issues of race, gender, ethnicity, or any of the factors which initiate EEOC administrative oversight, though these are not waived as future causes of action should subsequent investigation support them. The case does not involve issues of unfair wages or other conditions which require EEOC investigation.

Although the issue involved is employment discrimination, it is employment discrimination under 42 U.S.C. §1983 for deprivation of Rights. Briefly stated, the gross negligence or criminal negligence of the Employer Sharp resulted in physical injury to the Plaintiff in a vehicle accident on the job in which she was blameless, then the Employer (Sharp and Hobbie) terminated the employment of the Plaintiff because the Employer (Sharp) had injured her in the accident, and attempted to conceal the tortious conduct. Lest it be claimed that the Plaintiff was unable to work at the job doing her assigned work, hospital records indicate that after recovering from the accident sufficiently to return to do the job, the Plaintiff worked a full day, returned home, and was then terminated from that employment.

Termination occurred when Sharp manager, Tom D'Flipo, saw the Plaintiff working on the job after returning from the accident, and he terminated her employment as a cover up for his earlier unlawful actions. His tortious conduct concerning the accident and her subsequent termination of employment gave the Plaintiff (a) a cause of action against Superior-Sharp, himself, the pallet jack driver, for injury caused by gross negligence or criminal negligence, and its cover up, and (b) against Hobbie Personnel who told the Plaintiff that her employment at Sharp was terminated because Tom D'Flipo had called requesting the termination. Hobbie Personnel acquiesced to the unlawful acts of Sharp, becoming Principals, as well as accessories after the fact.

Subsequently, Hobbie Personnel filed false information with the Pennsylvania Department of Labor and Industry Unemployment Compensation Board of Review claiming the Plaintiff "voluntarily quit" the Sharp assignment. Hobbie also covered up their unlawful termination of employment with further unlawful acts depriving the Plaintiff of Rights. (Claims for Injury are itemized hereunder.)

Contrary to the clear medical report of hospital staff (physicians) saying that the Plaintiff was able to resume the same job just three days after the hit and run type accident, Hobbie represented to the State Unemployment Commission that the Plaintiff had been so grievously injured to such an extent that she was unable to do any type of

work at all. This was in addition to the false "voluntary quit". These were the two false reasons under which Hobbie denied the Plaintiff's Rights to receiving unemployment compensation.

A similar incident occurring on the street, in which <u>a pedestrian is struck by a moving vehicle resulting in injury</u> to her, would not be concluded under circumstances in which the pedestrian had her employment terminated because she had been struck and injured by a vehicle through no fault of her own. <u>In normal circumstances accident victims are not deprived of their Rights by having their employment terminated  by the perpetrator (or their employers) of the accident who injured them.</u>

In normal circumstances an accident is mutually exclusive of termination of employment when the accident victim has not caused the accident, nor in any way contributed to it, but been the unwitting victim. An accident of the type described is a tort to be settled as a tort with damages paid to the unwitting victim. When unlawful termination of an accident victim's employment ensues because of the accident, a cause of action under 42 U.S.C. §1983, and possibly under 42 U.S.C. §1981, arises, because <u>it is not only illogical to terminate someone's employment because you ran them down, but also unlawful for the perpetrator of such an accident to subject the victim to further distress above and beyond the initial tortious conduct by depriving her of Rights</u>

guaranteed by the Constitutions (Federal and State).

Typical accidents on the street are resolved by "no fault" means that clearly and openly compensate the accident victim for injuries and distress due to the accident. Covering up an accident results in criminal prosecution, as in a hit and run situation. The Employers' (Sharp and Hobbie) acts closely resemble the hit and run situation because they covered up, unlawfully and fraudulently claiming for the Pennsylvania Department of Labor and Industry Unemployment Compensation Commission that the Plaintiff "voluntarily quit" her job, whereas in fact she was terminated by both Sharp and Hobbie. This is not only unsworn falsification under State law, but deprivation of Rights under 42 U.S.C. §1983. (The criminal aspects of the case must be dealt with separately. These are the hit and run type parallel.)

It is also immaterial that the Plaintiff was employed directly by Hobbie, and not by Sharp. The nature of the incident was an accident based on gross negligence or criminal negligence at Sharp (presently undetermined), a cover up by Sharp, acquiescence to the cover up by Hobbie, and a deprivation of Rights by Sharp and Hobbie. It must be said that it was Sharp that was responsible for initiating the deprivation of the Plaintiff's Rights under 42 U.S.C. §1983 regarding termination of employment, but Hobbie acquiesced to everything, making them accessories after the

fact. Hobbie, as her Employer, directly terminated the Plaintiff's employment.

The matter of who was the direct Employer is also immaterial. A direct employee of Sharp, visitor, repair person, or anybody lawfully authorized to be walking in the Sharp facility, subjected to the same gross negligence or criminal negligence in a similar accident, would have a cause of action under 42 U.S.C. §1983 if Sharp treated her differently than one of their own employees, or in the manner they treated the Plaintiff. This assumes that Sharp addresses accidents properly, and reports them, not relying on the unintelligence of production people to keep Sharp tortious conduct unreported. <u>The Plaintiff was by law entitled to the same fair treatment and standard of care after the Sharp accident as permanent employees of Sharp, visitors, repair people, or anyone authorized to be walking in the Sharp facility</u>. Regarding the accident-employment issue, there was no distinction under law between the Plaintiff and permanent Sharp employees for purposes of 42 U.S.C. §1983.

The fact that the Plaintiff worked only a few days at the Sharp facility before the accident occurred is also immaterial. The accident could have occurred to any person who had been in the facility for only a short time, since it was caused by gross negligence or criminal negligence that occurred at Sharp, and Sharp is liable for indemnification for such acts whether the authorized party had been in the facility for

a minute or a hundred years before the incident occurred.

The statute requires that,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.... 42 U.S.C. §1983.

Both Sharp and Hobbie have deprived the Plaintiff of Rights (itemized hereunder).

The preliminary written Material Evidence in support of the Plaintiff's claim is the falsified filing of Hobbie Personnel with the Pennsylvania Department of Labor and Industry, stating the Plaintiff "voluntarily quit". Medical records substantiate the injuries from the accident, and it's date.

The Plaintiff has challenged the "voluntarily quit" charge of Hobbie Personnel with the Pennsylvania Department of Labor and Industry Unemployment Compensation Board for unemployment compensation purposes only. These issues are independent of this Court at this time, but the evidence detailing the unsworn falsification by Hobbie Personnel is the same. This Court deals with the deprivation of Rights of the Plaintiff arising from these falsified claims of Hobbie Personnel under 42 U.S.C. §1983. It is

possible that to bring all the elements of the case together that the Plaintiff will petition

the State Unemployment Compensation Review Board (or the Commonwealth Court)

to permit all the issues to be adjudicated by the Federal Court. As stated, a conflict of

interest exists in the State Court System to prevent hearing the 42 U.S.C. §1983 issues

in that System.

## BRIEF TIMETABLE OF EVENTS

| Day | Date | Event |
|---|---|---|
| Thursday | 13 Jan 2005 | Plaintiff sent to Sharp to work by Hobbie |
| Friday | 14 Jan 2005 | Plaintiff worked at Sharp |
| Saturday | 15 Jan 2005 | Plaintiff worked at Sharp |
| Monday | 18 Jan 2005 | Plaintiff run down and injured in accident at Sharp, treated at hospital |
| Friday | 21 Jan 2005 | Hospital OKs Plaintiff to return to same job |
| Monday | 24 Jan 2005 | Plaintiff works entire day shift at Sharp, employment terminated by Hobbie about 6.30 PM |
|  | Jan-Feb | Hobbie falsifies report to State Unemployment Board |
|  | Presently | Continuing deprivation of Rights regarding UC case |

## CLAIMS FOR INJURY AGAINST THE DEFENDANTS, et al.

The Defendants violated the Rights of the Plaintiff, as follows (partial list), for which the Plaintiff seeks a minimum of $150,000. per Count, the final amount per Count being determined by the full Jury, and prevailing standards at time of trial:

1.    **Incident of 18 January 2005** - Accident at Sharp

(Sharp) Tom D'Flipo deprived the Plaintiff of Rights after the accident, by not implementing proper procedure for reporting the accident, restitution for injuries, such as would be given to a Sharp employee, repair person, or other person lawfully authorized to be in Sharp facility, and not having anyone from the Sharp legal department talk with her to settle the injury claim at once and lawfully. (This is a claim under 42 U.S.C. §1983.)

2.    **Incident of 18 January 2005** - Accident at Sharp

(Sharp) Restitution for the injury itself caused by gross negligence or criminal negligence of Sharp pallet jack operator. (This is the tort claim included under pendant and ancillary jurisdiction as a necessary component of the case from which the numerous deprivations of Rights arose.)

3.     **Incident of 24 January 2005** - Termination of Employment

(<u>Sharp</u>) Tom D'Flipo deprived the Plaintiff of Rights by directing Hobbie to

terminate her employment at Sharp to cover up his earlier unlawful acts. (<u>This

is a claim under 42 U.S.C. §1983</u>.)

4.     **Incident of 24 January 2005** - Termination of Employment

(<u>Hobbie</u>) Laura Wallace deprived the Plaintiff of Rights by terminating her

employment at Sharp for the unlawful cause directed by Tom at Sharp. Hobbie

merely acquiesced to Sharp, but by acquiescing, became an accomplice

(Principal) and an accessory after the fact, and deprived the Plaintiff of Rights.

(<u>This is a claim under 42 U.S.C. §1983</u>.)

5.     **Incident of February 2005** - False statement <u>#1</u> to State Unemployment Com.

(<u>Hobbie</u>) Deprived the Plaintiff of Rights by claiming she "voluntarily quit" to

cover up the Sharp accident, and the unlawful termination of employment by

both Sharp and Hobbie. This deprived the Plaintiff of unemployment

compensation money, though the amount of money is not the issue. This was

unsworn falsification under State law. (<u>This is a claim under 42 U.S.C. §1983</u>.)

6.     **Incident of February 2005** - False statement <u>#2</u> to State Unemployment Com.

(<u>Hobbie</u>) Deprived the Plaintiff of Rights by claiming she was <u>so grievously</u>

<u>injured</u> that she could not do any type of work at all. This was completely contradictory to the report of qualified hospital staff (physicians) who 3 days after the accident pronounced the Plaintiff able to do her former job completely without restrictions. This deprived the Plaintiff of unemployment compensation money, though the amount of money is not the issue. This was unsworn falsification under State law. (<u>This is a claim under 42 U.S.C. §1983.</u>)

7.     **<u>Incident of 24 January 2005</u>** - False accident report

(<u>Sharp</u>) Deprived the Plaintiff of Rights by filing a false accident report, or no accident report, internally. If a true accident report citing gross negligence or criminal negligence of the pallet jack driver had been filed, (a) the Sharp legal department and (b) the police would have investigated, and (c) the <u>insurance company insuring Sharp</u> would have contacted the Plaintiff to resolve the issues of the accident out of Court. (<u>This is a claim under 42 U.S.C. §1983.</u>)

8.     **<u>Conspiracy Regarding Accident</u>** - January 2005, and continuing to present

(<u>Sharp</u> & <u>Hobbie</u>) Deprived the Plaintiff of Rights by conspiring together to cover up the accident at Sharp with falsified information of Hobbie to the Unemployment Compensation people. (<u>This is a claim under 42 U.S.C. §1985.</u>)

(Sharp & Hobbie 1 Count each) The statute used directly applies, and reads:

Title 42 U.S.C. § 1985. Conspiracy to interfere with civil rights.

(2)... if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the law, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; (3)... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

9.   **Failure to Prevent Conspiracy** - January 2005, and continuing to present

(Hobbie, and possibly Sharp) The Plaintiff does not know at this time who

initiated the conspiracy, believing it to be Sharp. The Plaintiff believes Hobbie

failed to report the deprivation of Rights as was mandatory under 42 U.S.C. §

1986, and they cannot plead ignorance because it is not "normal" to terminate

a person's employment after you have injured her with a vehicle under these

conditions. Failure to report is a deprivation of Rights in itself. (It may be

possible that the situation with Sharp and Hobbie is reversed with Sharp failing

to report Hobbie's cover up. However, of these Defendants, one of them

deprived the Plaintiff of Rights for failing to report.) To have a defense against

this claim, the culpable Defendant would need to prove they did not have any

capability to prevent the deprivation, which is impossible, since anyone can call

the police, make a report, and be absolved from § 1986 when the matter reached

Federal Court.  (This is a claim under 42 U.S.C. §1986.) The statute used

directly applies, and reads:

Title 42 U.S.C. § 1986. Action for neglect to prevent conspiracy

Every person who, having knowledge that any of the wrongs conspired to be
done, and mentioned in the preceding section [42 USC § 1985], are about to be
committed, and having power to prevent or aid in preventing the commission of
the same, neglects or refuses to do so, if such wrongful act be committed, shall
be liable to the party injured, or his legal representatives, for all damages caused
by such wrongful act, which such person by reasonable diligence could have
prevented; and such damages may be recovered in an action on the case; and any
number of persons guilty of such wrongful neglect or refusal may be joined as
defendants in the action.... But no action under the provisions of this section
shall be sustained which is not commenced within one year after the cause of
action has accrued.

(    **Subsequent Deprivations of Rights** to the Pennsylvania Department of Labor

and Industry Unemployment Compensation Review Board (and higher), etc.

(Hobbie) Hobbie filed false reports under unsworn falsification (State law),

claiming the Plaintiff "voluntarily quit". They will either make additional false

statements to back up their initial falsifications, or tell the truth and be liable to

State unsworn falsification. The Plaintiff believes Hobbie will maintain their

unlawful course of action in both the State System, and in this Court. Every

additional deprivation of the Plaintiff's Rights by each person will result in an additional count under 42 U.S.C. §1983, 1985, or 1986 against Hobbie.)

Note: Where "Sharp" is used in this section, it refers to Superior Group-Sharp Corp.

## RESPONSIBILITY

**Case law supports and establishes that an employer** (owner, CEO, President, conglomerate, holding company, etc.) **is completely responsible for discriminatory and tortious acts of their staff even if the employer claims it had no knowledge of the discriminatory or tortious acts.** This is **strict liability** and **vicarious liability**.

Liability covers both tortious acts, such as the accident itself, deprivation of Rights under 42 U.S.C. §§ 1983, 1985, 1986, and under 42 U.S.C. §1981, and acts under any additional causes of action that may be cited during the Discovery period until just prior to trial by jury when the Plaintiff has had opportunity to examine the evidence of the Defendants which is not presently in her possession. While the operation of a pallet jack might not be deemed a hazardous occupation for purposes of strict liability, the conditions surrounding its use, as acquiesced to by management, must be considered by the standard of the Reasonable Person, i.e., the mental and physical condition of the operator, whether he was intoxicated, a drug user, careless at shift end, etc.

An employee is an "agent" for the employer, meaning he has authority to make certain decisions on behalf of the employer. While this is true all the time for those at managerial or supervisor levels and upward, it is true of those who may not technically be supervisors or managers in certain occasions, particularly when the deprivation of Rights is so egregious to border on the criminal, such as those acts detailed herein.

When the supervisor or manager acts, it is as if the employer is taking the action. Because the employer gave the supervisor or manager power, the employer is held responsible for the supervisor's or manager's conduct. This is true in instances where it affects a "tangible employment decision", such as hiring, firing, promoting, demoting, work assignment, or reassigning of the victim, etc. Federal law establishes an employer who has 15 or more employees liable under these conditions.

## CAUSES OF ACTION

Because Discovery has not commenced, the Plaintiff's sole cause of action at this time is 42 U.S.C. §1983. However, the Plaintiff does not waive her Rights to proceed under 42 U.S.C. §1981, Title VII of the Civil Rights Acts of 1964 and 1991, and any other applicable causes of action that she may determine to be applicable as Discovery ensues and continues. Because the only cause of action firmly and obviously established at this time is 42 U.S.C. §1983, the Plaintiff has not proceeded to the

EEOC, which also cannot adjudicate or investigate complaints under 42 U.S.C. §1983. The Plaintiff believes it is well within her Rights to address issues of 42 U.S.C. §1983 directly in this Court, and should other causes of action, such as 42 U.S.C. §1981, or Title VII claims, arise, to incorporate them into this case. The fact that 42 U.S.C. §1981 and Title VII claims are not immediately obvious precludes the Plaintiff's two year journey through the EEOC which cannot, moreover, deal with the obvious primary cause of action 42 U.S.C. §1983.

## REQUISITE SPECIFICITY

The law requires requisite specificity of all charges that the Plaintiff brings against the Defendants to establish a proper Civil Action. Because the Plaintiff is proceeding *Pro Se*, she does not possess inexhaustible legal resources, such as those commanded by the Defendants (especially Superior-Sharp), therefore, she must wait until Discovery commences to secure additional records and data of the Defendants to build up a proper case. The Plaintiff is unable at this time to present a complete list of the violation against her, until such documents are obtained from the Defendant by Subpoena, or the information obtained by Federal Interrogatories. The Plaintiff believes that her 14th Amendment Rights under Due Process of Law and Equal Protection permit such, and that the specificity provided in this initial filing is sufficient to proceed.

## DEFAULT JUDGEMENT AMOUNT

The default judgement figure against Superior-Sharp and Hobbie stands presently at 10 counts, itemized above per Defendant, @ $150,000. per count, or $1,500,000. This is the minimum amount based on incomplete facts and records. The Plaintiff reserves the Right to reassess these counts and subdivide them to produce additional counts. An adjusted figure per count (higher) will be sought from the Jury.

Case law demonstrates that an employer (owner, CEO, President, conglomerate, holding company, etc.) is completely responsible for the discriminatory and tortious acts of its employees even if the employer claims it had no knowledge of the acts (due to falsified reports, no reports, cover up, etc.). Responsibility under 42 U.S.C. §1983, 1985, 1986 (and if established under 42 U.S.C. §1981, etc.) is well supported by case law. Employer responsibility for tortious conduct relating to vehicular accidents, hit and run accidents, and related, is well established in accident liability cases. By liability, the Plaintiff refers to strict liability, vicarious liability, and every other type of liability applicable in this situation relating to the employer (Superior-Sharp and Hobbie).

Supervisor and above are "agents" for the employer, meaning they have authority to make certain decisions on behalf of the employer. When the supervisor acts, it is as if the employer is taking the action. Because the employer gave the supervisor power,

the employer is held responsible for all unlawful acts of the supervisor. Federal law establishes an employer who has 15 or more employees under Title VII (which is not presently claimed, but not waived), but both Superior-Sharp and C. K. Hobbie have the minimum number of employees.

Both Superior-Sharp and C. K. Hobbie are responsible for the monetary Redress of Grievances due the Plaintiff based on her deprivation of Rights, and the tortious conduct of their employees, by the individuals listed, and by any other individuals not presently identified, such as the pallet jack operator and corporate people who set policy (to cover up hit and run accidents and deprive accident victims of Rights by terminating their employment and making falsified reports to State agencies), over and above their personal assets.

## DISCOVERY PERIOD

The Plaintiff requests that the Discovery Period remain open until she has collected sufficient data to prepare a properly completed case. Discovery will close immediately prior to trial, per the guidelines in the FRCP.

## TRIAL BY FULL JURY

The Plaintiff requests a trial by Full Jury, and the Case to be sent to the Jury Pool following submission of the Briefs (following Discovery).

## RELIEF SOUGHT

The Plaintiff seeks the following Relief from the Court:

1.  That the Court exercise Declaratory Relief and/or Injunctive Relief to permit her to obtain pertinent records of the Employers, the Defendants Superior-Sharp and C.K. Hobbie, that are Material Evidence in all aspects of this Case. Records include all accident reports, reports to State agencies, insurance reports, personnel records, etc. This can be by Subpoena or Interrogatory, as the Case proceeds.

2.  That the Court permit the Plaintiff to proceed to trial against the Defendants, and any other Defendants who may later be joined and/or separated under FRCP Rules 20 and 21, etc.:

    (A)  Under the primary causes of action 42 U.S.C. §§ 1983, 1985, 1986.

    (B)  Under 42 U.S.C. §1981, if it should be found to be applicable.

    (C)  Under Title VII of the Civil Rights Acts of 1964 and 1991, if it should be found to be applicable.

    (D)  Under torts law relating to accidents of this type, as necessary because the other cause(s) of action arose from a torts incident.

    (E)  Under all other applicable Federal and State statutes.

3.    That the Court deal with the falsification issues of Hobbie to the Pennsylvania Department of Labor and Industry inasmuch as they deprived the Plaintiff of Rights. This would be by pendant, ancillary, or other jurisdiction.

4.    That the Court provide such other Relief as it deems proper.

## CONCLUSIONS

1.    This Court has both subject matter and personal jurisdiction of all Parties.

2.    This Court has power to grant Relief under (a) 42 U.S.C. §1983, (b) 42 U.S.C. §1981, (c) Title VII of the Civil Rights Acts of 1964 and 1991, (d) torts law under pendant, ancillary, and other jurisdiction, (e) the Fourteenth Amendment of the Constitution, and (f) all other applicable Federal and/or State laws related to the issues and the unlawful acts subsequently arising from them.

3.    The Plaintiff has the Right to litigate in the United States District Court instead of in the State Court System which has a conflict of interest prejudicial against her in other issues, and before whom the Case cannot be adjudicated.

4.    The Plaintiff was a temp worker for Hobbie Personnel.

5.    The Plaintiff's work assignment was at the Superior-Sharp.

6.    The Plaintiff was subjected to significant and irreversible deprivation of Rights following an accident in which a pallet jack (small forklift) was driven into her

in the workplace, injuring her while on the job.

7.  The Plaintiff was in an authorized area properly walking to her work station at an authorized time, and in no way contributed to the accident.

8.  The pallet jack was operated under conditions or gross negligence and/or criminal negligence, to be determined when the Plaintiff secures records.

9.  After being injured in the accident, the Plaintiff was treated at a hospital related facility, and was cleared to return to work at the same job with no restrictions.

10. The Plaintiff returned to work at Sharp for Hobbie, and worked a full shift.

11. The employment of the Plaintiff was terminated by Hobbie at the request of Sharp, depriving her of Rights.

12. Hobbie subsequently filed reports with the Pennsylvania Unemployment Commission falsifying their unlawful termination of the Plaintiff's employment.

13. These false reports of Hobbie have to this time further deprived the Plaintiff of Rights in securing Unemployment Compensation, though the principle of law, not the amount of Unemployment Compensation, is addressed.

14. The tort of the accident itself was never addressed by the company that insures Superior-Sharp against such incidents.

15. The Plaintiff's accident was not handled in the proper manner in which all other

accidents involving a vehicle striking a person are lawfully handled.

16.     The closest comparison of the Plaintiff's accident to other accidents in which a

person is struck and knocked down by a vehicle is a hit and run incident in

which the perpetrator flees the scene or otherwise attempts to cover up without

taking legal responsibility for his acts.

17.     The Plaintiff does not know why she was singled out for such unlawful and

inhuman treatment that she believes differs substantially from any other person,

Superior-Sharp employee, repair person, authorized visitor, etc., who might have

been involved in a similar accident at the Superior-Sharp facility.

18.     The tort incident (accident) and the matters arising from it are unlawful under

Federal and State law.

19.     The fact that the Plaintiff was a temp worker with Hobbie working at Sharp does

not exonerate either Superior-Sharp or Hobbie in these incidents.

20.     The fact that the Plaintiff worked for Hobbie at Superior-Sharp just a few days

is immaterial under the circumstances of the accident and events arising from it.

21.     The insurance company for Superior-Sharp never contacted the Plaintiff, leading

her to believe a falsified report, or no report, of the incident had been filed.

22.     The Plaintiff does not have Superior-Sharp company accident records at this

time to determine whether her treatment at the hands of Superior-Sharp is the result of her "non-white" ethnicity, and if a "white" person subjected to an accident at Superior-Sharp would have been treated differently, i.e., not had their employment terminated after an accident for which they were not responsible.

23. The Plaintiff was injured physically and emotionally on the day of accident, was taken to a hospital type facility for treatment, and was unable to call the police or others for assistance to examine the condition of the pallet jack operator to establish a DUI situation, use of drugs or medication, "horseplay", or other causation that would classify it outside the no-fault category.

24. The Plaintiff believes racial-color-ethnic origin issues of discrimination may exist as a cause of action against Superior-Sharp, but not against Hobbie, showing the disparity of "treatment" between herself and a "white" person who might have been injured at Superior-Sharp. (This is mutually exclusive of Item 17 above.)

25. Item 24 is conceptual at the moment, and the Plaintiff cannot establish a cause of action under 42 U.S.C. § 1981 or Title VII, so the EEOC was not involved.

26. The EEOC cannot address any issues under 42 U.S.C. § 1983 which, besides the original tort from which the only other presently substantiated cause of action, 42 U.S.C. § 1983, arose, is the only cause of action.

27. The Plaintiff cannot presently support a "hostile workplace environment" cause of action at Superior-Sharp under Title VII, so the EEOC was not involved.

28. Although the Plaintiff is proceeding only under 42 U.S.C. § 1983 at the moment, she does not waive later additional claims under multiple causes of action, namely, (a) Title VII of the Civil Rights Act of 1964, 42 USC § 2000e-5(f) (1)(3), in which this Court can grant relief pursuant to 42 USC § 2000e-5(g), (b) the Equal Protection and the Due Process Clauses (Substantive Due Process relating to sex) of the Fourteenth Amendment of the United States Constitution, (c) 42 U.S.C. §§ 1985, 1986, for deprivation of Rights under the Constitution, (d) 43 Purdon's Pa. Cons. Stat. §§ 951-962.2, (e) Pennsylvania Human Relations Commission Guidelines on Sexual Harassment, 11 Pa. bull. No.5 (Jan. 31, 1981), (f) OSHA regulations and laws, and related statutes of the Federal and State Government, or any Federal, State, or (g) other law(s) because such claims are not supportable at the moment through lack of information available to her.

29. The Plaintiff does not know if Superior-Sharp and Hobbie upper management will cover up for the unlawful acts of their lower management people named and to be named.

30. The decision in Harris v Forklift Systems, 510 US 17 (1993), establishes that it

is unnecessary for the Plaintiff to prove severe psychological damage or seriously impaired work performance (physical damage), after the accident and subsequent events, based on the dated events, even though these occurred, if Title VII claims relating to a hostile workplace environment are later justified.

30. An employer (Superior-Sharp and Hobbie) is responsible for the acts of its employees above supervisor level under 42 U.S.C. §§ 1981 and 1983, Title VII, and other statutes under the jurisdiction of this Court, and for torts committed by anyone at any level when they give rise to Federal causes of action.

31. The Plaintiff is making a timely filing of this Complaint, approximately four months after the accident.

32. The Plaintiff believes Superior-Sharp reporting of the accident to the regulating bodies and their insurance company was fraudulent, or not made at all.

33. Based on the Items above, the Employer Superior-Sharp has no defense because effective procedures existed to address accidents, sexual harassment of the hostile workplace type (as opposed to the *quid pro quo* type), substance abuse (with reference to the pallet jack operator), and every other issue involved, but these procedures were not utilized by Superior-Sharp management, but circumvented unlawfully.

(1.5 Million US Dollars), being 10 counts @ $150,000. per count, permitting the Jury to adjust the figure upwards, or the amount to be adjusted by the Court to the standard prevailing per count at the time of trial.

Therefore, the Plaintiff requests the Honorable Court to proceed to judgement in this Civil Action under 42 U.S.C. § 1983, 1985, and 1986, permitting her to add additional causes of action within the jurisdiction of this Court, particularly, but not limited to, (a) Title VII of the Civil Rights Act of 1964,78 Stat. 253, as amended, 42 U. S. C. §2000e et seq. (1988 ed., Supp. III), including 42 USC § 2000e-5(f)(1)(3), in which this Court can grant relief pursuant to 42 USC § 2000e-5(g), (b) the Equal Protection and the Due Process Clauses (Substantive Due Process relating to sex, marriage, and families) of the Fourteenth Amendment of the United States Constitution, (c) 43 Purdon's Pa. Cons. Stat. §§ 951-962.2, (d) Pennsylvania Human Relations Commission Guidelines on Sexual Harassment, 11 Pa. bull. No.5 (Jan. 31, 1981), (e) OSHA regulations and laws for the workplace, and (f) related statutes of the Federal and State Government, should any or all of them be found to apply subsequently.

The Plaintiff thanks the honorable Court for upholding the Rights of (women) workers (of every ethnicity) in the workplace who are subjected to accidents through no fault of their own, that they should not be unfairly penalized by loss of employment

and Rights through fraudulent and unlawful acts of the Employer(s) which were also criminal.

The Plaintiff thanks the honorable Court for reflecting on the issues as they might pertain _personally_, and for the wave of revulsion and righteous indignation that rise in a normal person after such reflection. To be struck down as a pedestrian and injured by a vehicle through no fault of your own, but through the impaired judgement of another, you are subsequently fired from your job to cover up for being the unwitting victim of others. To cover one unlawful act, the perpetrators continue against you while you're down, heaping on more and more abuse. You wonder how people can think that way. Has the world gone mad, or do only the perpetrators need mental examinations?

Then you remember, there is law, and it can be exercised to correct insanities, such as this, and those who prey on the innocent.

Respectfully submitted,

Margaret Wallace

Date: 13 June 2005                    Margaret Wallace, Pro Se

Note:
The Plaintiff does not waive her Rights to prosecute the Defendants for the Claims for Injury in a Criminal Action filed with the U.S. Attorney in addition to this Civil Action, since the Claims for Injury encompass both Civil and Criminal Redress and Remedies.

# LIST OF EXHIBITS

1.   Plaintiff's injury records, 18 and 21 January 2005, 4 Pages.

2.   Falsification of Hobbie to State UC Bureau, 2 February 2005, 3 Pages. (This is the statement of the PA Dept. of Labor and Industry, the most direct proof that the Plaintiff presently has to demonstrate the deprivation of Rights by Hobbie, their falsified claims against the Plaintiff to the UC Bureau under unsworn falsification, documented by the UC Bureau.)

3.   Plaintiff's <u>Appeal 05-09-B-0857</u> to UCBR, 16 February 2005, 7 Pages. (This is submitted only to show that the Plaintiff immediately and vigorously objected to the fraudulent Hobbie claim, and did not acquiesce to any part of it. This Court does not presently have jurisdiction over whether the Plaintiff receives Unemployment monies, and the Plaintiff has not raised these issues before this Court. The <u>Appeal</u> is attached to show the Plaintiff's true account of the issues.)

Note:

Additional Defendants are contained in the confidential records of the Employers. Failure to list them does not constitute (a) insufficiency of process, (b) insufficiency of service of process, or (c) failure to join a necessary and/or indispensable party. Other Defendants will be discovered by Federal Interrogatories and served as the Case progresses.

Means of Service:                                    Certified Article, Return Receipt
                                                      (or as indicated)

| | |
|---|---|
| Michael E. Kunz, Clerk of Court, US Dist. Court | Filed in the Court |
| William G. Warden IV, CEO, Superior Group | 7004-2510-0003-3672-3728 |
| George K. Burke, President, Sharp Corp., Alltwn. | 7004-2510-0003-3672-3735 |
| George K. Burke, President, Sharp Corp., Consh. | 7004-2510-0003-3672-3742 |
| CEO, President, Owner, C.K. Hobbie, Inc. | 7004-2510-0003-3672-3759 |

I declare under penalty of perjury that the foregoing is true and correct.

Date: 13 June 2005                        Margaret Wallace, Pro Se Plaintiff